**The STATE of Ohio, Appellee,**

**v.**

**SCHMIDT, Appellant.**

[Cite as *State v. Schmidt* (1995), 100 Ohio App.3d 167.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9-94-37.

Decided Jan. 13, 1995.

*Jim Slagle,* Marion County Prosecuting Attorney, and *Craig W. Beidler,* Assistant Prosecuting Attorney, for appellee.

*Firstenberger & Mathews* and *Thomas A. Mathews,* for appellant.

HADLEY, Judge.

Defendant-appellant, Paul G. Schmidt, appeals from the judgment entry of conviction and sentencing in the Marion County Court of Common Pleas, whereby a jury found appellant guilty of two counts of abduction, violations of R.C. 2905.02(A)(2), with firearm specifications and physical harm specifications.

The following facts are elicited from the record on appeal. Prior to the October 27, 1993, incident which resulted in appellant's conviction, appellant resided with Annettee Almendinger and James Brown. Appellant and Almendinger dated while they resided together. However, a couple months prior to October 27, 1993, the two broke up and appellant moved out. Almendinger and Brown continued to reside together.

On the evening of October 27, 1993, Almendinger was at her place of employment, and Brown was at their residence. A friend, Richard Mahon, had come to visit Almendinger that evening. Appellant had phoned his former residence that evening and Brown informed him that Almendinger was not at home. Brown testified that a short time after the phone call, appellant came to the residence and made a noise at the door. After the noise at the door, Brown, believing appellant had a gun, attempted to block the doorway with a chair, and appellant's gun discharged. Brown stated that he felt a "burn" across his nose and ran to the bathroom. Mahon testified that at that time, appellant came through the door and told Mahon to put down his arms and the telephone, which Mahon had picked up to call police.

Appellant then told Mahon to tell Brown to get out of the bathroom or "he would kill [Brown]." After relaying this information to Brown, Mahon sat on the couch with appellant. Brown sat down for a short time, and then went to his bedroom. Sometime during the evening while appellant was at the residence, Brown did the dishes in the kitchen. During the time Brown did the dishes, Mahon threw the knives in the kitchen in a garbage can, pursuant to appellant's direction to get rid of them.

During the evening, Brown requested to take Mahon home, but appellant told Brown he could not do that. Brown stated that although he did not attempt to leave the residence, he did not attempt to do so because it would have been "foolish." The only way out of the bedroom (there were no windows) was one

entranceway, that did not have a door on it, which opened to the room in which Mahon and appellant were sitting.

Brown testified that he felt "more or less threatened by," but not afraid of, appellant's presence in his residence that evening. Brown further testified that although he had not planned on going out that evening, "I could leave but on the other hand he could have stopped me."

Mahon testified that he felt scared and frightened while appellant was there, and that appellant had the gun pointed at him during the evening.

Mahon sat and talked with appellant until Almendinger arrived home that evening. Appellant told Mahon to relax, because he would not kill him. When Mahon asked appellant if he could leave, appellant said he could not, but maybe later in the evening. When Almendinger arrived home, she requested to appellant that Mahon be allowed to leave, but appellant told him he could not at that time, but maybe later. Mahon eventually ended up staying the night at Almendinger's and Brown's residence.

When Almendinger arrived home that evening, she and appellant talked, and later appellant left the residence, apparently without resistance from any of the other parties in the residence.

Appellant was subsequently presented with a grand jury indictment, which charged him with one count of felonious assault, three counts of kidnapping (with physical harm specifications as to all four counts), and one count of aggravated burglary (with firearm specifications as to all five counts). The trial court dismissed the felonious assault, and reduced the kidnapping charges to abduction counts. As noted above, the jury returned guilty verdicts on two of the three abduction counts (against Brown and Mahon) and not guilty verdicts on the third count of abduction and the aggravated burglary count, after presentation of evidence at trial. Appellant was later sentenced, and this appeal ensued. From the trial court's judgment entry of conviction and sentencing, appellant asserts two assignments of error.

### Assignment of Error Number One

"A defendant has a concomitant right to waive a lesser included offense instruction pursuant to his rights under the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution."

We initially point out to appellant that contrary to Loc.App.R. 11(A), his first assignment of error sets forth a proposition of law, rather than an assignment of error which states the alleged error in the trial court. However, in the interests of justice, we will address this assignment.

■ Appellant essentially argues that he had a right to prevent the trial court from giving a jury instruction on the lesser included offense (abduction, R.C. 2905.02) of the crime with which he was charged in the indictment (kidnapping, R.C. 2905.01), relying upon *State v. Clayton* (1980), 62 Ohio St.2d 45, 47, 16 O.O.3d 35, 36, 402 N.E.2d 1189, 1191, fn. 2. The state argues that a defendant does not have the right to refuse an instruction on a lesser included offense, relying upon *State v. Seymour* (Nov. 9, 1993), Pickaway App. No. 90–CA–38, unreported, 1993 WL 472875.

■ In *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, the Ohio Supreme Court stated that a jury instruction on a lesser included offense is required when the evidence presented at trial supports an acquittal on the crime charged and a conviction on a lesser included offense of the crime charged. In *Clayton,* the Ohio Supreme Court stated in footnote two of the opinion that the defendant, charged with attempted murder, had the right to waive an instruction on the lesser included offense of attempted voluntary manslaughter. While we accept that as a correct interpretation of the law regarding jury instructions on lesser included offenses, we agree with the Fourth District Court of Appeals' opinion in *Seymour* that the *Clayton* decision should be interpreted to mean that although a defendant can *waive* a jury instruction on a lesser included offense, that does not mean that a defendant can *prevent* an instruction on a lesser included offense. *Seymour* at 25. As stated above, the Ohio Supreme Court has stated that in certain situations a jury instruction is *required. Thomas, supra.*

■ Moreover, as pointed out by the *Seymour* court, a trial court's instruction on a lesser included offense over the objection of the defendant does not threaten the defendant's constitutional right to have notice of the charges against him because when one crime is a lesser included offense of another crime, such notice constitutes sufficient notice of not only the crime charged, but also that a defendant can be convicted of any of the lesser included offenses of the crime charged. *Id.* at 24; R.C. 2945.75; see, also, *Asherman v. Meachum* (D.Conn. 1990), 739 F.Supp. 718.

Thus, despite appellant's protestations that the trial court not give an instruction on the lesser included offense (abduction) of the crime charged in the indictment (kidnapping), the trial court was required to give such instruction and appellant had sufficient notice that he could be convicted of kidnapping, or any lesser included offense of kidnapping, including, abduction.

Finally:

" * * * if evidence tending to prove a lesser included offense is present and a jury is inhibited by the charge from finding defendant guilty thereof, the collective conscience of that body may too easily be disposed to fabricate the

elements of the crime charged in the indictment and to find defendant guilty as charged rather than risk, by a verdict of acquittal, turning the malefactor loose upon a society grievously harmed by his act. This is speculation at its worst and a natural and probable consequence of a failure to charge on a lesser included offense when evidence of its commission is present." *State v. Loudermill* (1965), 2 Ohio St.2d 79, 81, 31 O.O.2d 60, 61, 206 N.E.2d 198, 200.

Thus, despite appellant's protestations, permitting a trial court to give a jury instruction on a lesser included offense protects, not prejudices, the rights of a defendant.

For the above stated reasons, this assignment of error is overruled.

### Assignment of Error Number Two

"The verdict[s] of guilty was against the manifest weight of the evidence and without sufficiency of evidence beyond a reasonable doubt for a finding of guilty."

Appellant argues in this assignment of error that the abduction verdicts were both against the manifest weight of the evidence and lacking in evidence on certain essential elements of the crimes. Appellant, in his one-paragraph argument for both allegations, does not state what element(s) of the abduction charge were lacking in evidence. Regardless, in the interests of justice we will address both the sufficiency and weight arguments of appellant, as the same test is utilized for reviewing both allegations. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503.

"The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts. * * * It must be kept in mind by the appellate court that the jury heard all of the evidence and was instructed as to the law and as a result found the accused guilty beyond a reasonable doubt. Moreover, the relevant inquiry does not involve how the appellate court might interpret the evidence. Rather, the inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

First, reviewing the sufficiency of the evidence to support the abductions convictions, we have reviewed the record and find that the jury had before it evidence of all the elements of abduction to support appellant's convictions for abduction of Brown and Mahon. Appellant was charged with abduction, pursuant to R.C. 2905.02(A)(2), which states:

"No person, without privilege to do so, shall knowingly do any of the following:

" * * *

"(2) By force or threat, restrain another of his liberty, under circumstances which create a risk of physical harm to the victim, or place him in fear."

As noted *supra*, Brown stated that he felt threatened and that, although he had no place to go the evening of October 27, 1993, he felt that any attempt on his part to leave his residence would have been "foolish." Brown also stated that he felt threatened by appellant's presence in his residence with a gun. Mahon also testified that he felt scared and frightened by appellant's presence, was told by appellant that he could not leave when he requested to do so, and had a gun pointed at him for most of the evening. Thus, we conclude that there was sufficient evidence on each of the elements of the crime of abduction presented for each count appellant was found guilty of by the jury.

Moreover, turning to appellant's manifest weight argument, the evidence set forth above, and a review of the record, reveals that the evidence presented was such that any reasonable trier of fact could have found appellant guilty beyond a reasonable doubt of abduction against the victims, Brown and Mahon.

This assignment of error is overruled. The judgment of the Marion County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SHAW, P.J., and EVANS, J., concur.